UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SCOTT DEVELOPMENT COMPANY,

    Plaintiff

v.                                                              CIVIL ACTION NO. 2:05-0802

MARTIN MARIETTA MATERIALS, INC. and
MICHAEL DEVIESE, a West Virginia resident,
Agent, servant and/or employee of
Martin Marietta Materials, Inc.,

    Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending are Scott Development Company's motions to remand and for attorney fees, filed October 14, 2005, and a motion to dismiss filed October 5, 2005, by Martin Marietta Materials, Inc. (MMMI) and Michael Deviese.

I.

      Plaintiff Scott Development Company ("Scott") is a West Virginia citizen. (Compl. ¶ 1). Defendant MMMI is a North Carolina citizen. (Not. of Remov. ¶ 5). Defendant Michael Deviese is a West Virginia citizen. (<u>Id.</u> ¶ 7.)

On August 31, 1995 Acme Limestone Company, Inc. ("Acme") entered into a lease agreement for the use of certain real property and improvements owned by Scott. (Compl. ¶¶ 2-3). The lease authorized Acme to unload, stockpile, and sell stone or aggregate from the leased premises, with the corresponding right to use an adjacent rail siding and unloading pit. (Id. ¶ 3). Scott was to receive 25 cents per ton of stone or aggregate Acme unloaded from the rail siding onto the lease property, up to 44,000 tons. (Id.). For auditing purposes, Scott was authorized to examine rail weight tickets received by Acme from the shipping railroad. (Id. ¶ 4).

The arrangement appears to have worked well until July 15, 1999. (Id. ¶ 5). On that date, Scott learned that Acme had previously assigned the lease to MMMI without authorization. (Id. ¶ 5). As noted in the complaint, the assignment appears to have violated paragraph 14 of the lease:

> 14. <u>ASSIGNMENT</u>: Lessee shall have the right to assign, pledge or transfer its interest in this lease to any affiliate of Lessee as long as Lessee gives prior written notice of such change in interest to Lessor and the notice explains the correct names of the person or persons receiving an interest in the Lease, an address for them, and exactly what their interest in the Lease may be.
>
> Lessee shall not otherwise, <u>without prior written consent of Lessor</u>, which shall not unerasonable [sic] be withheld, assign, transfer, or pledge any of

2

its interest under this Lease.

(Lease Agmt. ¶ 14 (emphasis supplied)).

On September 1, 1999, MMMI forwarded payment to Scott for the unloading of stone or aggregate for the period from July 22, 1999, through July 31, 1999. (Compl. ¶ 8). The CSX freight bills for this period accompanied the payment. (Id.) Following that date, however, MMMI failed to submit the freight bills with its payments. (Id. ¶ 9). The complaint specifically alleges as follows:

> For the balance of the year 1999, all of the year 2000, all of the year 2001, and all of the year 2002 . . . [MMMI] continued to stonewall . . . [Scott's] efforts to exercise its contractual right to examine the rail weight tickets . . . .

(Id. ¶ 12).

The complaint alleges that in January 2003, MMMI ceased the unloading, stockpiling and sale of stone from the premises. (Id. ¶ 13). The premises remained closed for the next 8 months, at which time Scott was notified by MMMI that it did not "'intend to renew the month to month term of the Lease after August 31, 2003, so that the term will expire on that date.'" (Id.) The complaint then alleges as follows:

> In August 2003, Michael Deviese, a West Virginia resident, agent, servant and employee of [MMMI], willfully, wantonly and maliciously directed,

3

> supervised and participated in the destruction of
> SCOTT'S stone yard, the leased premises, by:
>
> > 1. Ripping up and loading out the yard
> >    surface;
> >
> > 2. Destroying the membrane between the
> >    surface and base of the yard;
> >
> > 3. Gouging out the base and destroying the
> >    grade materially altering the terrain;
>
> All in violation of Paragraph 6 and 9 of the Lease . . .
> . .
>
> . . . .
>
> In late August, 2003, . . . [MMMI], acting through its
> agent, servant and employee, Michael Deviese, who,
> after completing . . . [MMMI's] wanton and willful
> destruction on and to SCOTT's property, locked the
> leased premises thereby denying and continuing to deny
> SCOTT access to the leased premises.

(<u>Id.</u> ¶¶ 14-15).

The complaint sets forth the following counts upon which relief is sought:

> 1. Accounting of the actual tonnage of stone or aggregate
>    shipped from the premises;
>
> 2. Compensatory damages based upon the accounting;
>
> 3. Fraud arising out of the malicious, oppressive, wanton,
>    willful, reckless, and criminally indifferent manner in
>    which due and owing sums were withheld from Scott;
>
> 4. Property damage and waste arising out of the
>    destruction of the leased premises;
>
> 5. Loss of use of the premises "from the period of time
>    defendant continued to unlawfully possess the leased

4

> premises after the termination of said lease as is set forth in paragraph (2) of said lease."

(<u>Id.</u> ¶¶ 16-20). The complaint seeks punitive damages. (<u>Id.</u> prayer for relief).

On September 28, 2005, defendants removed, alleging Deviese was fraudulently joined. (Not. of Remov. ¶ 9). On October 14, 2005, Scott moved to remand. Defendants contend Deviese is fraudulently joined because there are no tort claims properly alleged against him, as MMMI's agent, inasmuch as the complaint arises out of MMMI's putative breach of the lease alone, not from a breach of some positive legal duty imposed upon Deviese under West Virginia tort law.

Scott counters that the complaint seeks relief "under several contractual and tort theories." (Pl.'s Memo. in Supp. of Remand at 1.) Specifically, Scott contends it seeks property damages from Deviese based upon "an independent tort . . . ." (<u>Id.</u> at 2). Scott continues as follows:

> Paragraph No. 19 of said complaint clearly sets forth a tort claim for property damages seeking both compensatory and punitive damages related to the specific tortuous [sic] conduct of defendant Michael Deviese who as agent, servant and employee "willfully, wantonly and maliciously directed, supervised and participated in the destruction of plaintiff Scott's stone yard". These allegations of destruction of property against Mr. Deviese are clear and unambiguous; The destruction of Scott's stone yard as

5

>caused by the specific acts of Mr. Deviese permit recovery in tort . . . .

(<u>Id.</u> at 3). Scott claims it also has alleged tort theories against Deviese arising out, <u>inter alia</u>, of the manner in which he excluded Scott from access to the premises. (<u>Id.</u> at 4).[1]

## II.

A.  The Governing Standard

The fraudulent joinder standard is well settled. Our court of appeals lays a "heavy burden" upon a defendant removing a case on such grounds:

>"In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis added) (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a

---

[1] Scott also appears to challenge satisfaction of the amount in controversy. The court need not reach that argument.

6

motion to dismiss[.]" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

As the decision in Hartley illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

> CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.
>
> <u>In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact</u>. Allowing joinder of the public defendants is proper . . . because courts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties [as] joined . . . unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
>     . . . . .
>
> <u>We cannot predict with certainty how a state court and state jury would resolve the legal issues</u> and weigh the factual evidence in this case. <u>Hartley's claims may not succeed ultimately, but ultimate success is not required . . . . Rather, there need be only a slight possibility of a right to relief</u>. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

Id. at 425-26.

B.  Analysis

In support of their argument that Scott's claims are covered solely by the lease, and hence do not extend to Deviese in his capacity as MMMI's agent, defendants cite <u>Lockhart v. Airco Heating & Cooling, Inc.</u>, 211 W. Va. 609, 567 S.E.2d 619 (2002). As stated by the author of that opinion, Justice Maynard, the primary issue was whether Airco, a heating contractor, had any duty of care to the decedent during the installation of a heat pump.

In <u>Lockhart</u>, the supreme court of appeals first observed that Airco was under no duty in tort to protect the decedent, a man with various lung and breathing conditions, from temperature fluctuations that might occur in the home during the heat pump installation process. It was only after the decedent contended that the parties' contract imposed such a duty that the supreme court went on to elaborate as follows:

> [E]ven if Airco contractually agreed to take precautions to avoid causing any harm to Mr. Lockhart's health, Mrs. Lockhart cannot maintain an action in tort for an alleged breach of a contractual duty. This Court has held that "[i]n the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others." Stated another way,

8

> Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a <u>mere omission</u> to perform a contract obligation. <u>An action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract</u>.
>
> 86 C.J.S. Torts § 4 (1997). Thus, "[a] tort, although growing out of a contract, must nevertheless possess all of the essential elements of tort."

<u>Id.</u> at 614, 567 S.E.2d at 624 (citations and footnote omitted).

Based upon <u>Lockhart</u>, defendants assert "[i]t is abundantly clear in this case that the source of the duty for Plaintiff's tort claims against Mr. Deviese -- and . . . [MMMI] for that matter -- is the Lease based on the allegations of the complaint." (Defs.' Resp. at 8). Defendants, however, read both <u>Lockhart</u> and the complaint much too narrowly.

Attention is properly focused on the allegations that Deviese personally, and in a "wilful[], wanton[] and malicious[] manner[,]" damaged Scott's property and further barred Scott from access to the premises.² (Compl. ¶¶ 14-15). Unlike Airco in

---

²Regarding the claim that Deviese unlawfully locked off the premises, defendants essentially contend the law imposes no positive duty upon a wrongdoer to refrain from preventing a property owner from accessing his or her property. As noted below, the colorable question of whether such a duty would be
(continued...)

9

Lockhart, it is possible that West Virginia law might impose a legal duty in tort upon Deviese, separate and apart from the lease, to refrain from damaging and locking off Scott's property in such an intentional manner. As argued at length by MMMI, Deviese, as an authorized agent for MMMI, likely could not be held accountable for his misconduct under the lease itself.[3] The question then arises as to whether the supreme court of appeals would insulate, or instead impose a legal duty upon, the principal wrongdoer to redress two of the principal wrongs alleged in this case.

A reading of the complaint in its entirety, and from a plaintiff-centered perspective, illustrates Scott is not simply complaining that a corporate agent, at his principal's direction, committed acts in violation of the lease. Instead, the very personal, state-of-mind allegations against Deviese indicate the pursuit of tort claims divorced from the lease that, as noted, may or may not have governed the relationship between Scott and MMMI.

---

[2](...continued)
imposed is itself sufficient to overcome a fraudulent joinder allegation.

[3]There is even a colorable claim, springing from paragraph 5 of the complaint, that MMMI itself is not subject to the lease, having taken an unauthorized assignment of it from Acme. In such a situation, Scott's theories against MMMI might be grounded in a combination of both tort and quasi-contract.

10

The question of whether the supreme court of appeals would recognize a separate duty by an agent under the somewhat unusual circumstances presented here is not an easy one. In <u>Aikens v. Debow</u>, 208 W. Va. 486, 541 S.E.2d 576 (2000), the supreme court of appeals clarified its jurisprudence on (1) the respective functions of the court and the jury in creating legal duties, and (2) the attendant considerations aiding the inquiry:

> To correct any misconception . . . we restate the law of this State, as follows: The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.
>
> [L]egal commentators agree that "[t]he determination of any question of duty . . . has been held to be an issue of law for the court rather than for the jury, to be determined <u>by reference to the body of statutes, rules, principles, and precedents which make up the law</u>." 57A Am. Jur. 2d Negligence § 86, at 142 (2d. ed. 1989) (footnote omitted).
>
> We recognized in <u>Robertson v. LeMaster</u>, 171 W. Va. 607, 301 S.E.2d 563 (1983), that while foreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another, "<u>[b]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection[.]</u>" <u>Id.</u> at 612, 301 S.E.2d at 568. "<u>Such considerations include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant.</u>" <u>Id.</u>

<u>Id.</u> at 491, 541 S.E.2d at 581 (emphasis added).

Neither party suggests the supreme court of appeals has yet passed on the presence of a positive legal duty in tort imposed upon an agent under the factual circumstances presented in this case. <u>Hartley</u>, however, is instructive on this point as it intersects with the fraudulent joinder inquiry:

> No South Carolina case has squarely held that the public duty rule forecloses Hartley's claims. Further, it is unclear whether a state court would apply the rule to her claims because the six-part test requires a judgment call at every turn. The presence or absence of each element often depends on several variables and may require factual investigation. . . . These judgment calls may go either way. Thus, we cannot say with certainty that a South Carolina state court would find Hartley's claims barred by the rule.
>
> Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly "novel" issue such as this cannot be the basis for finding fraudulent joinder. The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery.

<u>Hartley</u>, 187 F.3d at 424-25 (citations omitted).

Like the circumstances in <u>Hartley</u>, the court would be called upon to apply a multi-factor test here, with further uncertainties occasioned by the contract/tort distinctions alluded to by the defendants, and the unusual situation accompanying the unauthorized assignment of the lease. This multi-layered inquiry would, like <u>Hartley</u>, "requir[e] a judgment call at every turn . . . ." Additionally, discovery may reveal

any number of considerations that might inform the inquiry further.[4]

Inasmuch as the court, with respect to the remand issue, is required to resolve the open factual and legal questions in Scott's favor, fraudulent joinder is absent. The court, accordingly, ORDERS that plaintiff's motion to remand be, and it hereby is, granted. The court further ORDERS this action be, and it hereby is, remanded to the Circuit Court of Boone County for all further proceedings.[5]

Regarding the motion for attorney fees, title 28 U.S.C. § 1447(c), provides that a court remanding a case may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. The Supreme Court recently held that "[a]bsent unusual circumstances, courts

---

[4]The court notes that the language used in the complaint arguably goes beyond allegations of negligence to accuse Deviese of committing an intentional tort outside the scope of his employment with MMMI. Viewed in this manner, the question of Deviese's independent duty in negligence becomes largely academic. See Musgrove v. Hickory Inn, Inc., 168 W. Va. 65, 65, 281 S.E.2d 499, 500 (1981) ("An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship.").

[5]Consequently, the court does not reach the merits of defendants' dispositive motion.

may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital, --- U.S. ----, 126 S.Ct. 704, 711 (2005). As the Supreme Court explained, this standard "recognizes the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 711.

In view of the arguably inartful manner in which Scott pled its claims, there was an objectively reasonable basis for defendants to seek removal under the belief that the only claims alleged arose out of the lease. The court, accordingly, ORDERS that Scott's motion for attorney fees be, and it hereby is, denied.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and a certified copy to the clerk of court for the Circuit Court of Boone County.

DATED: April 18, 2006

John T. Copenhaver, Jr.
United States District Judge